UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORDAN M.S. HASTIE,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:18-cv-0898 CKD<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will grant plaintiff's motion for summary judgment and deny the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1996, applied on June 16, 2014 for SSI, alleging disability beginning December 15, 2006. Administrative Transcript ("AT") 21, 32, 191. He later amended his alleged

////

////

onset date to June 16, 2014.[1]  (AT 66.)  Plaintiff alleged he was unable to work due to a learning disability and partial trisomy 13.  AT 245.  In a decision dated August 19, 2016, the ALJ determined that plaintiff was not disabled.[2]  AT 21-34.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since June 16, 2014, the application date.
>
> 2. The claimant has the following severe impairments: chromosomal disorder and intellectual disability.

---

[1] Regardless of plaintiff's alleged disability onset date, SSI is only available from the month after he filed his application.  See AT 21, citing 20 C.F.R. § 416.335.

[2]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

   The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple, repetitive tasks.
>
> 5. The claimant has no past relevant work.
>
> 6. The claimant was born on XX/XX/1996 and was 18 years old, which is defined as a younger individual age 18-49 on the date the application was filed.
>
> 7. The claimant has at least a high-school education and is able to communicate in English.
>
> 8. Transferability of job skills is not an issue in this case because the claimant does not have past relevant work.
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, since June 16, 2014, the date the application was filed.

AT 23-33.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following error in finding plaintiff not disabled: The ALJ's RFC finding that plaintiff could perform simple, routine, repetitive work was not supported by substantial evidence.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is

responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

The court first notes the following background findings from the ALJ's decision: "Genetic testing shows that the claimant has a rare chromosomal disorder called Partial Trisomy 13q . . . associated with shorter life expectancy and other medical problems [including] developmental delays, partial absence seizures, attention deficit disorder, nocturnal enuresis, and intellectual disability. Multiple administrations of psychometric tests confirm he has borderline intellectual functioning." After the June 2014 application date, plaintiff "worked at REI as part of a college program at Fresno State, the Wayfinders Program, which is a 2-year postsecondary transition program for students with intellectual disabilities. He worked seven hours a week [and] did not earn income at the substantial gainful activity level." AT 24; record citations omitted.

Turning to plaintiff's argument, "[p]laintiff agrees that, as far as it goes, the ALJ's RFC for simple, routine, repetitive work . . . is accurate." (ECF No. 14-2 at 15; record citation omitted). However, plaintiff argues, "[i]n addition to plaintiff's obvious limitation to simple tasks, the record patently supports additional limitations which, at a minimum, include his demonstrated need for frequent to constant support while performing tasks; that, even with the

support, he can perform such tasks at a slow pace and not always accurately; and a host of social/interpersonal issues relating to his immaturity and bedwetting/defecating himself." (Id. at 15-16.)

Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for assessing residual functional capacity. SSR 96-8p. Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). RFC is assessed based on the relevant evidence in the case record, including the medical history, medical source statements, and subjective descriptions and observations made by the claimant, family, neighbors, friends, or other persons. 20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3). When assessing RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work[.]" 20 C.F.R. §§ 404.1545(a)(4).

Here, plaintiff argues, the ALJ improperly discounted the opinions of two physicians, Dr. Tezcan and Dr. Nakagawa, who indicated that plaintiff had nonexertional limitations beyond those reflected in the RFC.

A. Dr. Tezcan

Dr. Kamer Tezcan was plaintiff's treating geneticist. In a May 2014 consultation, Dr. Tezcan diagnosed plaintiff with borderline intellectual disability due to partial trisomy 13q and noted that he had a "medical history of developmental delays." AT 540-541. Dr. Tezcan noted that plaintiff had "no significant problems" psychologically and was "not on any meds." AT 540.

In letters written in 2015, Dr. Tezcan reported that plaintiff's "longstanding medical history" included partial absence seizures, Attention Deficit Disorder, Nocturnal Enuersis and Intellectual disability which are all associated with . . . Partial Trisomy 13q." AT 659. Dr. Tezcan further reported "impairments in his understanding, remembering, and carrying out complex instructions and hence the need for ongoing supervision. Due to his limited ability to concentrate and focus . . . he will need extra time to perform tasks" and may need to avoid multitasking and complex work-related decisions. AT 659, 661, 663.

5

The ALJ weighed the opinion of Dr. Tezcan as follows:

> Dr. Tezcon [sic] is a treating physician whose opinion would generally be given great weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record. Dr. Tezcon noted the chromosomal disorder was characterized as 'lifelong intellectual disability resulting in impaired judgment and reasoning ability. The claimant has impairments in understanding, remembering, and carrying out complex instructions and requires ongoing supervision. He has limited ability to concentrate and focus, requires extra time to perform tasks, and may need to avoid multitasking and tasks requiring judgments on complex work-related decisions. (7F, 8F, 9F, 13F.) His opinion is supported by numerous psychometric reports showing results consistent with borderline intellectual functioning and his history of special education in school. Additionally, the claimant is enrolled in Wayfinders a program for intellectually impaired students and evidence from the program quarterly reports indicates he has some difficulty doing household chores but can manage simple tasks such as planning meals, shopping for groceries, planning a budget, and accessing his bank account. Additionally, he can independently take a shuttle to class. He worked at REI and Save Mart and could perform at least simple tasks. Thus substantial evidence supports Dr. Tezcon's opinion that he has limits in his ability to perform more than simple tasks or tasks requiring judgments on complex work related decision. <u>Accordingly, I assign this opinion great weight.</u>

AT 31 (emphasis added).

Plaintiff argues that the ALJ effectively rejected Dr. Tezcan's findings as to plaintiff's needs for "ongoing supervision" and "extra time to perform tasks," in the RFC. In discounting these findings, plaintiff argues, the ALJ relied on plaintiff's Wayfinders work program, but failed to account for the fact that plaintiff only worked for seven hours a week while living in a highly structured and supported environment. See AT 312-313 (Wayfinder's residential program focused on independent living skills and employment skills, with coaches to "support students in learning appropriate skills relating to living independently," academic coaches, and vocational training through "participating in work experience" on a limited basis); AT 323 (March 2016 Wayfinders note that plaintiff "is working at REI as part of the warehouse crew. He works twice per week when the delivery truck is scheduled. His responsibilities include taking merchandise out of boxes, [sorting, stocking, and cleaning]. A Job Coach is assigned to work with Jordan as he learns the various tasks.").

At the hearing on his disability application, plaintiff testified that he had a job coach for

his first few weeks at REI and then continued to work there seven hours a week on his own, but never discussed the possibility of full-time work there (AT 70, 72); similarly, he initially had a job coach in his job taking tickets at a sports arena (AT 74). The coaches gave on-the-job instructions and reported on plaintiff's progress to the vocationalist specialist at Fresno State. AT 73-74. Plaintiff's mother testified that his job reports for taking tickets at the arena were great, but "he had a lot of direction" and "he needs that guidance." AT 84-85.

Plaintiff further testified that, when taking a train, "We have other coaches in our program that help us purchase the ticket and then we just keep our ticket with us and then there's a coach assigned to take us to the train station and they make sure we have our ticket and then we go." AT 74-75. Plaintiff testified that he would probably also have a job coach if he worked seven hours a week at Buffalo Wild Wings. AT 77. His mother expressed doubt that he could work there successfully, citing ongoing hygiene issues, uncontrolled eating, and drooling. AT 82-83.

B. Dr. Nakagawa

Dr. Janice Nakagawa performed a consultative exam of plaintiff in April 2016. The ALJ discussed her opinion at some length:

> On April 29, 2016, the Disability Determination Service procured a psychological evaluation of the claimant by Licensed Psychologist, Janice Nakagawa, Ph.D., who reviewed medical records, social IEP reports, Dr. Tezcon's description of claimant's conditions, information from Wayfinders, and psychological test results. She interviewed both the claimant and his mother.[3]
>
> She noted on review of the records provided her that "a consistent concern was claimant may present as far higher functioning than is the real case, particularly in areas of socioadaptive functioning, using independent judgment in social situations, and problem solving." ... His mother reported he is much more limited than he superficially appears. She said he continues to experience enuresis and

---

[3] The ALJ's decision summarized the hearing testimony of plaintiff's mother, writing in part: "He has continuing hygiene issues including failure to brush his teeth and bathe. Although he has improved, she has quarterly meetings with the program coordinator and she was told he will likely fail the program, as he cannot handle simple hygiene standards. . . . She opined he could not handle a full time job because he has processing delays, is nonverbal, and cannot read facial cues. . . . He has no sensation of needing to use the restroom and has difficulty with fecal incontinence and cleanliness. He has no sense of smell." AT 28; see AT 78-88.

7

> encopresis[4] and had a bowel movement in a store but that he does not notice such occurrences and required reminders to change his clothes.
>
> . . .
>
> Dr. Nakagawa noted the claimant was adequately dressed and groomed. He was oriented, and only when he began discussing matters did his deficits become prominent. His mood was pleasant and cheerful and his affect was nonlabile. His speech was relevant, goal directed, and coherent. . . .
>
> . . .
>
> Dr. Nakagawa diagnosed the claimant with encopresis and enuresis (function of chromosome issues), mild intellectual disability, and assessed a global functioning score of 59, which the Diagnostic and Statistical Manual of Mental Disorders, 4th ed., describes a GAF score of 51-60 as indicative of moderate symptoms . . . or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). <u>Functionally, she opined he can handle simple job instructions, but despite how he appears 'normal,' he will require a supportive work environment. He cannot consistently relate to coworkers and supervisors without special accommodation. He would be profoundly compromised if he were to independently use judgment in dealing with the public.</u> He can respond to usual work situations if repetitive, but one should not expect he could use independent judgment. He cannot manage his own funds.

AT 30-31 (emphasis added), citing AT 953-959.

In her 2016 report, Dr. Nakagawa concluded that it was "profoundly evident" that plaintiff "continues to have notable, long-term, and permanent deficits with respect to socioadaptive functioning." AT 959. "In summary, even though Claimant may be able to complete simple job instructions, despite how he appears to be 'normal,' he will require a supportive work environment. He cannot consistently relate to co-workers and supervisors without special accommodations. . . . He does have notable limitations that would preclude him from being able to engage in viable work behaviors in an independent way." AT 959.

The ALJ assigned "some weight" to Dr. Nakagawa's opinion, specifically "great weight to her opinion that he could perform simple job instructions" but little or none to "her opinion that

---

[4] Encopresis, sometimes called fecal incontinence or soiling, is the repeated passing of stool (usually involuntarily) into clothing. https://www.mayoclinic.org/diseases-conditions/encopresis/symptoms-causes/syc-20354494 (last visited 7/2/19).

he requires a supportive work environment and would have difficulty consistently relating to coworkers." AT 32. In discounting the second part of Dr. Nakagawa's opinion, the ALJ reasoned:

> His work at the Arena involved interactions with the public and his jobs at Save Mart involved working with coworkers and he had no reports of difficulty with such interactions, thus, her opinion he could not consistently relate to coworkers is not supported by substantial evidence.

AT 32.[5]

Plaintiff points to record evidence supporting Dr. Nakagawa's opinion that plaintiff required a supportive work environment and would have trouble relating to coworkers. In July 2015, an Alta California Regional Center (ACRC) Individual Program Plan for plaintiff noted that he "[h]as a short attention span and can get sidetracked easily." AT 690. Plaintiff's mother was advised to seek a "limited conservatorship" for him through the courts. AT 689.

In October 2015, a Wayfinders vocational assessment of plaintiff noted "potential barriers" to working, including:

> Has difficulty with understanding another person's perspective/opinion, especially when he perceives a 'wrong.' He may become frustrated and a little argumentative.
>
> Jordan does not initiate social interactions.
>
> Short-term memory
>
> Short attention and easily sidetracked
>
> Must have others check for his ability to understand
>
> . . . He requires extra time to perform tasks. . . .
>
> Sometimes has difficulty either controlling his impulses or responding appropriately to negative stimuli.

---

[5] Similarly, the ALJ partially credited the opinions of State agency physicians Dr. F. Mateus and Dr. S. Regan, who reviewed plaintiff's medical records in 2014 and 2015, respectively, and opined that he could perform simple, routine tasks. AT 31; see AT 106, 120-122. The ALJ adopted that finding but discounted the agency physicians' additional limitation of minimal contact with others, writing: "[Plaintiff] has successfully worked around other coworkers and thus I find no limitation in his ability to work with coworkers." AT 33. The resulting RFC limited plaintiff to simple, repetitive tasks but did not include any other nonexertional limitations.

AT 1676.

On January 28, 2016, Wayfinders filed a special incident report due to plaintiff's slapping another Wayfinders student across the face in an argument. AT 318. The student described past "punching incidents" and other aggressive behavior by plaintiff. AT 318-319. The report noted that "Wayfinders staff will work with Jordan in understanding that his actions are a type of bullying." Plaintiff was suspended from the program for four days. AT 319.

On March 9, 2016, a Wayfinders quarterly progress report noted that plaintiff was doing well at his twice-weekly job at REI but struggled with hygiene and required multiple prompts to complete daily household chores. AT 320-324. Plaintiff underwent a psychological evaluation in April 2016, in which Dr. Nakagawa concluded that, consistent with his mother's reports, plaintiff had "profoundly evident" deficits in socioadaptive functioning. AT 959.

The RFC requires the ALJ to consider a claimant's ability to meet certain job demands, such as physical demands, mental demands, sensory requirements, and other functions. 20 C.F.R. §§ 404.1545(a), 416.945(a). Here, the RFC erroneously disregarded nonexertional limitations opined by Dr. Tezcan and Dr. Nakagawa, such that the finding of nondisability is not supported by substantial evidence. The RFC does not account for medical opinions and record evidence that suggest one or more of the following limitations (in addition to simple, repetitive work): a structured work environment, limited interaction with coworkers, limited interaction with the public, additional time to complete tasks, or special workplace accommodations to account for ongoing hygiene and bathroom issues. Thus plaintiff is entitled to summary judgment on this claim.

CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ

10

would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record as a whole creates serious doubt as to whether plaintiff was disabled during the relevant period. On remand, the ALJ shall reevaluate the medical opinion evidence and provide legally sufficient reasons for discounting any opinion as to plaintiff's impairments and/or ability to perform work-related functions. The ALJ shall question the vocational expert as to any resulting RFC.

The court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand. The court also does not instruct the ALJ to credit any particular opinion or testimony. The ALJ may ultimately find plaintiff disabled during the entirety of the relevant period; may find plaintiff eligible for some type of closed period of disability benefits; or may find that plaintiff was never disabled during the relevant period, provided that the ALJ's determination complies with applicable legal standards and is supported by the record as a whole.

For the reasons stated herein, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is granted;
2. The Commissioner's cross-motion for summary judgment (ECF No. 17) is denied; and

3. This matter is remanded for further proceedings consistent with this order.

Dated: July 12, 2019

/s/ Carolyn K. Delaney
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/hastie0898.ssi.ckd